UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JEROMI BAZUAYE,

                    Plaintiff,          06 Civ. 8259 (DAB)(DFE)

        - against -                     (This is not an ECF case)

CHRISTOPHER SHANAHAN;                   REPORT AND
EDWARD J. McELROY,                      RECOMMENDATION
New York District Director, Bureau of   TO JUDGE BATTS
Immigration and Customs Enforcement,
Department of Homeland Security;
MR. KEMP, Deportation Officer;

                    Defendants.
------------------------------------x

DOUGLAS F. EATON, United States Magistrate Judge.

        Pro se plaintiff Jeromi Bazuaye seeks the return of the cash

proceed of a $1,500 bond he posted in 1997 with the Immigration

and Naturalization Service ("INS").  Bazuaye's Complaint was

dated August 17, 2006, but it was postmarked September 8, 2006,

and it was received by our Court's Pro Se Office on September 12,

2006. [1]  The Complaint's prayer asked our Court to issue an

"injunction restraining respondents ... from forfeiting

plaintiff's bond proceed," and to issue a declaration "that

plaintiff did not substantial[ly] violate [the] stipulated

conditions of the bond," and to compel the defendants to return

the $1,500 plus interest.

        Plaintiff attempted to proceed by Order to Show Cause, but

on October 17, 2006, Judge Batts wrote:

----

        [1]  The Complaint cites Exhibits A through H, and annexes all of them
except Exhibit E; I shall refer to certain of Plaintiff's Exhibits as "Pl.
Exh. ___."

       The Plaintiff's Motion for expedited or
extraordinary relief is DENIED.  Plaintiff
seeks monetary damages and therefore equitable relief is not appr

       The Plaintiff may proceed by regular
process however.  The defendants shall have
30 days to move or answer once served with
the Complaint.

(Docket Item # 3.)  The court file does not show that plaintiff

ever served "regular process" on any of the defendants, but

Assistant U.S. Attorney Shane Cargo eventually received the

Complaint.  (See Docket Items # 4 and # 6.)  On March 16, 2007,

AUSA Cargo served and filed a Motion to Dismiss, accompanied by a

Memorandum of Law ("Def. Mem.") and his Declaration annexing

Defendants' Exhibits A through G.  (I shall refer to certain of

Defendants' Exhibits as "Def. Exh. __".)  AUSA Cargo also served

and filed a Notice warning Plaintiff that "the court may convert

the motion to a motion for summary judgment," and that the

Complaint "may be dismissed without a trial if you do not respond

to this motion by filing sworn affidavits or other papers as

required by Rule 56(e)."

On April 6, 2007, Bazuaye filed an opposing memorandum ("Pl.

Opp.") and his Declaration ("Pl. Decl.") in which he made a few

new allegations.  AUSA Cargo did not file any reply papers.

On January 18, 2008, Judge Batts referred the case to me for

a Report and Recommendation.  I recommend that Judge Batts

dismiss the Complaint as barred by the six-year statute of

limitations set forth in 28 U.S.C. §2401(a).

-2-

Bazuaye does not dispute the documentation that the INS sent (by certified mail, return receipt requested, to the address specified by Bazuaye in the bond) a notice requiring him to appear at 26 Federal Plaza on March 23, 1998.  (Def. Exhs. D and E.)  It is undisputed that Bazuaye did not appear on that date. He alleges (a) that he never received the notice, (b) that in late March or early April 1998 he made an undocumented visit to 26 Federal Plaza and orally notified the INS about a new mailing address, and (c) that he did not receive the INS's August 13, 1998 "Notice -- Immigration Bond Breached" (Def. Exh. F).  Even if we assume these allegations to be true, they are immaterial to the statute of limitations.

If Bazuaye believed that he had substantially complied with the bond's obligations, then on August 2, 1999, he was (or certainly should have been) aware of all the events which fix the Government's alleged liability to return his $1,500.  The 1997 bond said:

> ...[T]he obligor [Bazuaye] hereby furnishes such bond with the following conditions:  if said alien is released from custody and if the above mentioned obligor shall ... produce himself/herself to an immigration officer or an Immigration Judge, as specified in the appearance notice, upon each and every written request until deportation/removal proceedings in his/her case are finally terminated **or until the said alien is actually accepted by the INS for detention** or deportation/removal, then this obligation shall be void; ....

-3-

(Def. Exh. C, at ¶I(3), emphasis added.)  Bazuaye was "actually accepted by the INS for detention" on August 2, 1999, when he was transferred from a New York State prison to INS custody.  Under the six-year statute of limitations, Bazuaye was required to file this suit by August 2, 2005; he filed more than a year late.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Bazuaye is a citizen of Nigeria who entered the United States in 1982 with a student visa.  In 1991, he became a Lawful Permanent Resident based on his marriage to a U.S. citizen.  In 1992, he received a prison sentence on a federal felony.  In 1997, he received a prison sentence on a state felony; he then took more than four years to perfect his appeal to the Appellate Division.

INS and its successor the Bureau of Immigration and Customs Enforcement ("ICE") have made several attempts to deport Bazuaye. He has appealed the orders of deportation and removal, and he remains in the U.S. because of ongoing litigation on the issue of his removability.  After he had four proceedings before Immigration Judges ("IJs") and three appeals before the Board of Immigration Appeals ("BIA"), the Second Circuit remanded his case to the BIA for further proceedings. *Bazuaye v. Mukasey,* 272 Fed. Appx. 77 (2d Cir. April 11, 2008).  Bazuaye's lawsuit in our Court does not involve the merits of the deportation issues; it simply seeks return of the $1,500 posted in 1997.  Bazuaye makes

-4-

some allegations about 1998.  To put those allegations in
context, I will describe the events from 1992 to 2008.

### The first deportation proceeding

On February 21, 1992, in the Eastern District of Virginia,
Bazuaye pleaded guilty to a felony under 18 U.S.C. § 1029(a)(3)
(possession of 15 or more counterfeit or unauthorized access
devices, with intent to defraud).  The pre-sentence report stated
that the loss was $259,944.40.  He was sentenced to 37 months in
prison.

The INS initiated deportation proceedings against him in
Oakdale, Louisiana by an Order to Show Cause dated June 3, 1994.
(Pl. Exh. A.)  It charged that he committed a crime of moral
turpitude within five years of his admission to the United
States.  On March 17, 1995, in Arlington, Virginia, IJ Cary H.
Copeland ruled that the crime was committed more than five years
after Bazuaye's admission into the U.S.  (See Pl. Exh. B.)  The
INS did not appeal that decision.

### The second deportation proceeding

On May 21, 1997, in Supreme Court, New York County, a jury
found Bazuaye (under the alias of "Bradley Cain") guilty of
attempted grand larceny in the third degree; on June 25, 1997, he
was sentenced to a term of 1 1/3 to 4 years.  "Cain"/Bazuaye took
more than four years to perfect an appeal to the Appellate
Division, which unanimously affirmed the conviction, *People v.*

-5-

*Cain*, 291 A.D.2d 326, 737 N.Y.S.2d 852 (1ˢᵗ Dep't Feb. 26, 2002), *lv. denied,* 98 N.Y.2d 673, 746 N.Y.S.2d 462 (Ct. App. June 28, 2002)(Table).

While Bazuaye was in prison at Green Haven Correctional Facility in Stormville, New York, the INS served him with a Notice to Appear ("NTA") dated August 7, 1997.  (Pl. Exh. C.) The INS also lodged a detainer at the prison.  (Pl. Exh. D.) Thus, when Bazuaye was paroled by New York State in or about November 1997, he was transferred to the custody of the INS; he was again transported to Oakdale, Louisiana.

In a proceeding at Oakdale, the INS argued a different theory, that the 1992 conviction was an "aggravated felony" because it "involve[d] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000."  The IJ disagreed. [2]  As for the 1997 conviction, Bazuaye had filed a notice of appeal. At the end of the hearing on December 3, 1997, the IJ ordered that Bazuaye be released on the $1,500 bond.

So Bazuaye was not in custody during all of 1998, although he was under the parole supervision of New York State.  In or about February 1999, Bazuaye was arrested in New York for violating parole.  (Cplt. ¶16.)  The INS recommended deportation

---

[2] Apparently, the IJ's rationale was that neither the criminal statute nor the 1992 judgment of conviction specified that the loss exceeded $10,000. However, almost six years later, the BIA ruled that the presentence report was acceptable as evidence of loss; it stated that the loss had been $259,944.40. (See Cplt. ¶ 13 and BIA opinion dated 7/30/03, Pl. Exh. G at p. 4.)

proceedings by filing a new NTA, dated May 12, 1999, with the Immigration Court in York, Pa.  (Cplt. ¶16 cites Pl. Exh. E; the Complaint annexes a page entitled "Exhibit E," but fails to annex the 5/12/99 NTA.)  On August 2, 1999, Bazuaye was transferred from New York State prison to INS custody and he was taken to York, Pa.  (Cplt. ¶16.)  In a hearing at York, Pa., the INS argued that the definition of "aggravated felony" (enacted as of September 30, 1996) should be retroactively applied to the 1992 conviction.  In a decision dated September 1, 1999 (Pl. Exh. F), IJ William Van Wyke disagreed.  He also noted that Bazuaye was not yet subject to removal based on the 1997 conviction (because it was still on appeal).

In a decision dated July 30, 2003 (Pl. Exh. G), the BIA reversed IJ Van Wyke's opinion.  The BIA reinstated removal proceedings and remanded with directions to apply the 1996 definition of "aggravated felony" to the 1992 conviction, and also to consider the presentence report's statement that the loss was $259,944.40.

Meanwhile, the 1997 conviction had become final.  On May 1, 2006, in New York, IJ Alan L. Piper ordered that Bazuaye be removed from the U.S. based upon the 1992 and 1997 convictions.  (Cplt. ¶17.)  On February 12, 2007, the BIA affirmed the order of removal.  Bazuaye appealed to the Second Circuit, which remanded to the BIA for further proceedings.  *Bazuaye v. Mukasey,* 272 Fed.

-7-

Appx. 77 (2d Cir. April 11, 2008).

On May 14, 2008, Bazuaye notified the Pro Se Office that his new address is an apartment in West New York, N.J.  (Docket Item #14.)  This suggests that he has been released on a new bond. (When he mailed the Complaint in September 2006, he was an ICE detainee in Freehold, N.J.  Later, he was a detainee in Uniontown, Ala.)

<u>The evidence about what occurred in 1998</u>

During 1998, Bazuaye/Cain was at liberty subject to two sets of conditions: (1) his obligations to his New York parole officer, including a report of any change of address, and (2) his obligations under his INS bond, including a report of any change of address.  In or about February 1999 he was arrested by New York State for violation of parole conditions (Cplt. ¶ 16); the record does not say which particular conditions of his parole.

<u>The 1998 documents from the Government's file</u>

On March 5, 1998, the INS issued a notice requiring Bazuaye to appear at 26 Federal Plaza for an interview on March 23, 1998. (Def. Exh. D.)  The INS mailed this Notice by certified mail, return receipt requested, to Bazuaye at 302 Eastern Parkway, Brooklyn, NY 11225, the address specified by him on the bond. Def. Exh. E is a copy of the INS's envelope; the writings on the envelope indicate that the Postal Service made at least two delivery attempts before returning the letter as unclaimed.

-8-

(Def. Exh. E.)  On August 13, 1998, the INS mailed a notice to Bazuaye at the same address, stating that he had breached the 1997 bond by not appearing for the interview on March 23, 1998. (Def. Exh. F.)

Bazuaye's allegations about 1998

In paragraphs 14-15 of the Complaint, Bazuaye states:

> 14.  Plaintiff was released f[ro]m INS custody on [December 3, 1997] after posting a $1,500 cash bond.  After his release, Plaintiff contacted the Immigration Court in Oakdale, LA, to find out his next court date, he was notified that INS did not file an NTA with the court, therefore, [plaintiff asserts,] there was no removal proceedings pending against him in the Immigration Court in Oakdale, LA.  Thereafter, Plaintiff telephoned the Oakdale INS office.  INS personnel informed Plaintiff that his Immigration File has been transferred to INS office in New York.  Further, Plaintiff telephoned New York INS office and, he was informed that the 1997 state conviction on direct appeal in New York appellate court was be[ing] monitored and, that the INS would contact him in the future.

> 15.  On or about early 1998, plaintiff contacted the New York INS office to notify it with his new address.  An unknown Deportation officer requested Plaintiff to appear at INS office in 26 Federal Plaza, New York, N.Y.  Plaintiff went to the INS office the next day, he was informed by unknown INS deportation officer that the INS attempted to contact him at his previous address.  Plaintiff requested that INS return his $1,500 bond proceed, since [according to him] there was no removal proceedings pending against him in any Immigration court.  The unknown deportation officer told plaintiff that INS would contact him in writing.

After receiving AUSA Cargo's motion papers, plaintiff submitted new details about the conversation alleged by him in the preceding paragraph.  His 3/24/07 Declaration says:

> 6.  On or about late March or early April, 1998, an unknown deportation officer requested me to appear at INS office for interview, the next day I went to INS office at 26 Federal Plaza, New York, New York for an interview before an unknown Deportation Officer.  I provided the unknown deportation officer with my new mailing address (P.O. Box 2296 New York, New York 10108).
>
> 7.  At the interview, I requested that the INS should return my $1,500 bond proceed, since [according to Bazuaye] there was no removal proceedings pending against me in any Immigration Court.  The unknown deportation officer did not inform that the INS had considered the delivery bond breached and that my $1,500 would be forfeited to the government.  Instead, the unknown officer told me that INS would contact me in writing, because INS was monitoring his 1997 New York state conviction that was pending on direct appeal before New York State Supreme Court First Department Appellate Division, and, that the INS would determine whether to commence deportation/ removal proceedings against him after the New York State criminal appeal process was completed.

There is no evidence to corroborate that plaintiff actually had the alleged P.O. Box 2296, or that a P.O. Box would be accepted by the INS as the address for a resident alien released on bond (or by the New York State Parole Department as the address for a parolee).  There is no document to show that the INS received any notice of change of address.  His Declaration at ¶6 alleges that he "provided" the unknown officer with a new address, but he does

-10-

not claim that he did this in writing as required by the 8/7/97
NTA (Pl. Exh. C, p. A110.)  And indeed, the INS still used the
302 Eastern Parkway address in August 1998, when it mailed
Bazuaye the "Notice -- Immigration Bond Breached."  (Def. Exh. F,
which Bazuaye alleges he did not receive.)  As we shall see,
Bazuaye's allegations are immaterial to the statute of
limitations.

<u>DISCUSSION</u>

<u>Jurisdiction</u>

The plaintiff bears the burden of establishing, by a
preponderance of the evidence, that our Court has subject matter
jurisdiction over his claim.  *Makarova v. United States*, 201 F.3d
110, 113 (2d Cir. 2000).  The Complaint, at Paragraph 2, alleges:
"The court has jurisdiction over the subject matter pursuant to
28 U.S.C. sections 1331, 1343, 1346, 2001 [sic] and 2202, and the
United States Constitution."

Since § 2001 applies to court-ordered sales of realty, it is
clear that Bazuaye intended to refer to § 2201 which, along with
§ 2202, allow the remedy of a declaratory judgment.  However,
those sections do not create jurisdiction; they apply only where
the plaintiff has already established that the case falls within
a federal Court's jurisdiction:  "a case of actual controversy
within its jurisdiction."  28 U.S.C. § 2201(a).

Section 1331, "Federal Question," says:

> The district courts shall have original
> jurisdiction of all civil actions arising
> under the Constitution, laws, or treaties of
> the United States.

But the plaintiff must prove that his action actually "arises
under" a particular statute or Constitutional provision.
Similarly, § 1343 refers to "any civil action authorized by law,"
including "any Act of Congress providing for the protection of
civil rights."  If Bazuaye wanted to bring an action for a
violation of a Constitutional provision pursuant to *Bivens v. Six
Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388,
91 S.Ct. 1999 (1971), he would have to serve an individual
defendant.  He has never served any individual defendant in this
case.  Moreover, his Complaint names the individual defendants
only in their official capacities.  (Cplt. ¶¶5-7, reaffirmed in
Pl. Opp. at p. 8.)  "Because an action against a federal agency
or federal officers in their official capacities is essentially a
suit against the United States, such suits are also barred under
the doctrine of sovereign immunity, unless such immunity is
waived."  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502,
510 (2d Cir. 1994).

The one remaining basis for jurisdiction alleged in the
Complaint is the correct one, namely 28 U.S.C. § 1346, which
applies to civil actions against the United States as defendant,
and in particular § 1346(a)(2), commonly referred to as the
Little Tucker Act.  In the Little Tucker Act, the United States

-12-

has waived its sovereign immunity as to certain claims "not exceeding $10,000."

AUSA Cargo's memorandum, at pages 5-7, correctly says:

> Because Bazuaye seeks liquidated damages based on the Government's alleged breach of contract, the United States is the only proper defendant. *See, e.g., Boyd v. United States,* 482 F. Supp. 1126 (W.D.Pa. 1980) (dismissing action as to employee and agency defendants because "[o]nly the United States Government itself is amenable to suit under either of these statutes [the FTCA or the Tucker Act]. Employees and specific government agencies are not proper defendants.") (citing *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874-75 (9ᵗʰ Cir. 1975); *Morano v. U.S. Naval Hospital*, 437 F.2d 1009, 1010 (3d Cir. 1971). Also, this case must be considered a suit against the United States because the individual defendants are being sued in their official capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3104-06 (1985) (suit against federal officer in official capacity is a suit against the United States).
>
> \*    \*    \*
>
> ... Accordingly, the Complaint should be dismissed as to the named defendants, and the United States should be substituted as the proper defendant.

Concerning the statute of limitations, the parties are in agreement on two points:

> 1. "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action accrues."  28 U.S.C. § 2401(a).
>
> 2. "[A] claim first accrues 'when all the events which fix the Government's alleged liability have occurred and the plaintiff was

-13-

> or **should have been** aware of their
> existence.'" *Hoffman v. United States*, 266
> F.Supp.2d 27, 40 (D.D.C. 2003), quoting
> *Hopland Band of Pomo Indians v. United
> States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)
> (emphasis added).

Indeed, Bazuaye repeats the *Hopland* quotation in his Pl. Opp. at
page 10.

AUSA Cargo's 3/19/07 Memorandum, at page 10, argues:

> Even assuming that Bazuaye did not
> receive notice from the Government of the
> bond cancellation, he had knowledge of his
> potential claim in 1998, as he admits that
> "[o]n or about early 1998," he "requested
> that INS return[] his $1,500 bond."  Compl.
> ¶ 15.

In response, Bazuaye's Opposition, at pages 9-10, repeats his
allegation that he did not receive the August 1998 Notice of
"Immigration Bond Breached," and he argues:

> ... Defendants' failure to provide
> Plaintiff with [that] notice ... tolled
> the statute of limitation in this case,
> because Defendants concealed the declaration
> of ["]delivery bond breached["] from him
> until he was provided [with a] copy on
> July 20, 2006.

I reject Bazuaye's argument that the defendants "concealed"
the INS's August 1998 notice that the bond had been breached.
The documents in the INS file indicate that the INS mailed the
Notice (Def. Exh. F) to the address specified by Bazuaye in the
bond.  It appears that, on this occasion, the INS may have used
regular mail rather than certified mail, but the bond allowed
this; it said: "The obligor further agrees that any notice to

-14-

him/her in connection with this bond may be accomplished by mail, directed to him/her at the above address."  (Def. Exh. C, ¶C.) In any event, there is no evidence of affirmative concealment.

On the other hand, I reject AUSA Cargo's argument that Bazuaye's right to sue for the $1,500 necessarily accrued in 1998.  I note that Bazuaye's 3/24/07 Declaration (read liberally) alleges as follows:  Some unnamed INS employee orally assured him, in late March or early April 1998, that the $1,500 bond would continue in effect and "that the INS would determine whether to commence deportation/removal proceedings against him after the New York State criminal appeal process was completed." (3/24/07 Pl. Decl. ¶ 7.)

However, even if we assume that Bazuaye actually believed in April 1998 that the 1997 bond would continue in effect, it is crystal clear that any such belief ended in 1999.  In or about February 1999, Bazuaye got arrested again; he was taken into New York State custody for violation of parole.  (Cplt. ¶ 16.)  And then, on or about August 2, 1999, he was transferred from New York custody to the custody of the INS, which had "commenced a removal proceedings against [Bazuaye] by filing a[] Notice to Appear dated May 12, 1999 . . . ."  (Pl. Decl. ¶ 8.)

The 1997 bond said that, if Bazuaye complied with his obligations "until the said alien is actually accepted by the INS for detention ..., then this obligation shall be void; ...."

-15-

(Def. Exh. C, at ¶I(3).)  Bazuaye was "actually accepted by the INS for detention" on August 2, 1999.  If he believed that he had substantially complied with the bond's obligations, then on August 2, 1999, he "was or should have been aware" of "all the events which fix the Government's alleged liability" to return his $1,500.  *Hoffman*, 266 F.Supp.2d at 40, quoting *Hopland*, 855 F.2d at 1577.  Accordingly, Bazuye's right of action accrued on August 2, 1999, and the six-year statute of limitations (28 U.S.C. § 2401(a)) expired on August 2, 2005, more than a year before Bazuaye even wrote the Complaint.

<u>CONCLUSION AND RECOMMENDATION</u>

I recommend that Judge Batts (a) substitute the United States as the proper defendant, and (b) dismiss Bazuaye's Complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy, (i.e. **no later than January 23, 2009**) by filing written objections with the Pro Se Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Deborah A. Batts, U.S.D.J. at Room 2510, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street.  Failure to file objections within 10 business days will preclude appellate

review.   *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *Small*
*v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2nd
Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72,
6(a), and 6(d).  Any request for an extension of time must be
addressed to Judge Batts.

*Douglas F. Eaton*

DOUGLAS F. EATON
United States Magistrate Judge

Dated:    New York, New York
          January 5, 2009

Copies of this Report and Recommendation are being mailed on this
date to:

Mr. Jeromi Bazuaye
5612 Hudson Avenue
Apt. # 3D
West New York, NJ   07093

Shane Cargo, Esq.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

Hon. Deborah A. Batts

-17-

Copies of this Report and Recommendation are being mailed on this date to:

Mr. Jeromi Bazuaye
5612 Hudson Avenue
Apt. # 3D
West New York, NJ   07093

Shane Cargo, Esq.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

Hon. Deborah A. Batts